# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tyler Larrison,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-08342-PCT-DWL<br><br>**ORDER** |

At issue is the Commissioner of Social Security's ("Commissioner") denial of Plaintiff's application for Title XVI Supplemental Security Income under the Social Security Act ("Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of the decision, and the Court now considers Plaintiff's Opening Brief (Doc. 13, "Pl. Br."), the Commissioner's Response Brief (Doc. 16, "Def. Br."), Plaintiff's Reply Brief (Doc. 17, "Reply"), and the Administrative Record (Doc. 12, "R."). For the following reasons, the Court will reverse and remand for further proceedings.

**I.   BACKGROUND**

Plaintiff was born on July 31, 1995. (R. at 475.) He was adopted at age three and suffers from certain cognitive deficits, likely due to drug and alcohol abuse by his biological mother during pregnancy. (*Id.* at 481–538, 584.) He repeated kindergarten, was enrolled in school until fifth grade, and was home-schooled until high school. (*Id.* at 478.) While enrolled, he was in individualized education classes. (*Id.* at 478.) He also received speech therapy for most of his life. (*Id.*) The highest grade he completed was tenth grade.

(*Id.* at 45.)

Plaintiff filed his application on September 16, 2014, alleging disability as of March 1, 1999. (*Id.* at 15.) Plaintiff alleges he is unable to work because he has trouble remembering and comprehending tasks. (*Id.* at 47, 241.) He also states he cannot count money. (*Id.* at 47, 245.) The Commissioner denied the application initially and upon reconsideration, and a hearing before an administrative law judge ("ALJ") was held. (*Id.*) The ALJ found Plaintiff was not disabled in a written decision that was upheld by the Appeals Council. (*Id.* at 15–28, 1–3.) The ALJ found that Plaintiff had the severe impairments of cognitive disorder, attention-deficit hyperactivity disorder, and borderline intellectual functioning. (*Id.* at 17.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels but with certain non-exertional limitations. (*Id.* at 22.) Specifically, Plaintiff could "perform simple, routine tasks that may be learned by demonstration and which do not require the ability to multi-task"; "make simple, work related decisions in an environment with few changes and free from fast-paced production requirements, like those found in assembly line work"; and "have occasional and superficial interaction with coworkers and the public, such that the interaction is incidental to the task performed." (*Id.*) Based on this RFC, as well as Plaintiff's age, education, and work experience and testimony from a vocational expert ("VE") (*id.* at 70-72), the ALJ found Plaintiff could perform work as a cleaner II and hand packager and was therefore not disabled. (*Id.* at 27–28.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*

To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

…

…

…

## III. ANALYSIS

### A. The ALJ's Sole Reason For Rejecting The Opinions Of Plaintiff's Treating Psychiatrist Is Not Supported By Substantial Evidence

Plaintiff alleges the ALJ erred in rejecting the opinions of his treating psychiatrist, Dr. Jeffrey Penney. (Pl. Br. at 7-10.) Dr. Penney saw Plaintiff eleven times between May 2015 and February 2017. (R. at 534–39, 582–83, 600–13.) He rendered four separate but similar opinions concerning Plaintiff's mental abilities. (*Id.* at 483–90 [September 2014], 584–90 [August 2016], 593–99 [December 2016], 618–24 [May 2017].) Plaintiff alleges that Dr. Penney's opinions compel a finding of disability under Listing 12.11 and/or when coupled with the VE's testimony. (Pl. Br. at 7, 15.)

When evaluating a medical opinion, the ALJ considers: (1) whether the physician examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the physician's specialization; and (6) "other factors." 20 C.F.R. § 416.927(c). Generally, opinions of treating physicians are entitled to the greatest weight; opinions of examining, non-treating physicians are entitled to lesser weight; and opinions of non-examining, non-treating physicians are entitled to the least weight.[1] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). If the ALJ discredits a controverted opinion of a treating or examining physician, the ALJ must provide "specific and legitimate" reasons supported by substantial evidence. *Id.* An ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Id.*

Here, the ALJ gave "little weight" to Dr. Penney's opinions for one reason—because she found that "the extreme limitations [to which] he has opined are not consistent

---

[1] A treating source's opinion is given "controlling weight" if it is "well-supported" by objective medical evidence and is "not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). Those conditions are not present here.

with his treatment notes, which fail to demonstrate such extreme limitations." (R. at 25.)

This reason is specific and legitimate, but it is not supported by substantial evidence. Although the ALJ provided a detailed summary of the facts and clinical evidence, she failed to explain with any precision *why* this summary was inconsistent with Dr. Penney's opinions. It is not sufficient for an ALJ to identify a treating physician's opinion, summarize the clinical evidence, and then offer the *ipse dixit* that the two are in conflict—reasoning and explanation are required. Given this backdrop, the Court is impermissibly left to speculate about what the specific conflicts in the evidence may be, how the ALJ interpreted the evidence, and how the ALJ reached her conclusion that "the extreme limitations [Dr. Penney] has opined are not consistent with his treatment notes." The Court cannot affirm based on such speculation. *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1226 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

**B. The ALJ's Findings Regarding Plaintiff's Daily Activities Are Not Supported By Substantial Evidence**

Plaintiff's next assignment of error concerns the ALJ's determination that his symptom testimony was inconsistent with his activities of daily living. (Pl. Br. at 9–15.)

Plaintiff alleged, in his application materials and during his hearing testimony, that he has problems reading and remembering, can only pay attention for 2-3 minutes at a time, and cannot manage his finances. (R. at 47-70, 241-48.) Plaintiff also alleged that he needs reminders to take showers and do chores, that he has problems remembering shows he watches, and that, in a normal day, he sits at home, watches television, and drives to the store. (*Id.*)

The ALJ found that "[a]lthough the record clearly supports some degree of mental limitation, [Plaintiff's] allegations are not wholly consistent with his activities of daily living." (*Id.* at 24.) First, the ALJ found that Plaintiff's ability to watch Netflix undermined

his allegations because "watch[ing] television shows on Netflix . . . requires not only concentration and focus to watch the shows, but also the ability to call up the application of the viewing device and navigate the application, which would also require the ability to remember the steps necessary to access the television shows." (*Id.*) The ALJ also noted that Plaintiff was able to describe the shows he was watching on Netflix with "a notable level of sophistication." (*Id.*) Second, the ALJ found that Plaintiff's ability to play two video games, Call of Duty and Candy Crush, "shows a certain degree of ability to understand, remember, and apply information, as well as maintain persistence, pace, or rate." (*Id.*) The ALJ noted that Plaintiff testified he sets up "bots" as opponents when playing Call of Duty (*id.*) and asserted that playing Candy Crush "requires a player to swap adjacent candies among several on the gameboard to form rows or columns of at least three matching-colored candies." (*Id.*)

Absent evidence of malingering, the ALJ may only discount a claimant's statements and testimony for "specific, clear and convincing" reasons that are supported by substantial evidence. *Molina*, 674 F.3d at 1112; *Thomas;* 278 F.3d at 959. General findings are insufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099. "[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1113. However, a claimant's daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id. See also Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (affirming ALJ's finding that while claimant's daily activities "did not suggest [he] could return to his old job," such activities "did suggest that [his] later claims about the severity of his limitations were exaggerated").

As an initial matter, the Court disagrees with Plaintiff's argument that the ALJ committed legal error by determining that his Netflix and video game usage constituted potential bases for discounting his symptom testimony. *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), does not, as Plaintiff contends (Pl. Br. at 11), categorically prohibit the consideration of such activities. In *Orn*, the Ninth Circuit held that an ALJ erred by finding that reading, watching television, and coloring in coloring books were skills transferable to the role of a "surveillance system monitor." *Id.* at 639. This was because "a surveillance system monitor is a security position that requires sustained concentration and attention, as well as the ability to act immediately in emergencies" and "reading, watching television, and coloring in coloring books are activities that are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace." *Id.*

Here, in contrast, the ALJ didn't find that Plaintiff could perform a security position that requires sustained concentration and attention. To the contrary, the ALJ determined that Plaintiff's RFC would only allow him "to perform simply, routine tasks . . . in an environment with few changes and free from fast-paced production requirements." (R. at 22.) Thus, if there were substantial evidence showing that Plaintiff engaged in sophisticated, fast-paced tasks requiring memory and concentration when watching Netflix or playing video games, such evidence could function as a specific, clear and convincing reason for rejecting his testimony about his limitations.

Nevertheless, the problem here is that the record is not fully developed concerning Plaintiff's Netflix viewing and video-game playing—and, thus, the ALJ's proffered reasons are not supported by substantial evidence. For example, the sum total of Plaintiff's testimony concerning his Netflix viewing is that is favorite television show is "[a]nything on Netflix I haven't seen before." (R. at 48-49.) Although Plaintiff followed this answer by providing a brief summary of the plots of several shows and movies he'd previously watched, at no point did Plaintiff describe how he interacts with the Netflix application. Thus, the ALJ's conclusion that Plaintiff has "the ability to call upon the [Netflix] application of the viewing device and navigate the application, which would also require

the ability to remember the steps necessary to access the television shows" (R. at 24) is speculation—it's possible, for example, that Plaintiff's parents (he lives on a trailer on their property) may help him navigate the application.

Similarly, Plaintiff's only testimony concerning Candy Crush was that, when asked whether he has "any games you like to play," he responded: "That Candy Crush game. But that got boring after a while, because they wouldn't get paid for it." (R. at 51.) Although the ALJ apparently concluded, based on this one statement, that Plaintiff had mastered Candy Crush's technical details and therefore must possess an ability to concentrate and perform repetitive tasks ("That game requires a player to swap adjacent candies among several on the gameboard to form rows or columns of at least three matching-colored candies," *see* R. at 24), this conclusion is based on speculation—it does not follow, from Plaintiff's brief statement that he stopped playing the game because it "got boring," that Plaintiff mastered the game before the boredom kicked in. Although this is a possible explanation, more foundation is required. It's possible, for example, that Plaintiff became bored because he couldn't figure out how to play.

Finally, and in a similar vein, Plaintiff's brief testimony concerning Call of Duty is that he preferred to "set up bots" and play against them because he found the alternative—going online to play against other people—"impossible" and unenjoyable and "[t]oo much drama." (R. at 52-53.) The record contains no evidence concerning the level of concentration and cognition (if any) that is required to "set up bots" in Call of Duty, so the ALJ's conclusion that such activity is inconsistent with Plaintiff's claimed limitations is another example of a proffered rationale not being supported by substantial evidence.

### C. The ALJ's Finding That Plaintiff's Impairments Did Not Satisfy Listing 12.11 Is Rational And Supported By Substantial Evidence

Plaintiff alleges that he has "marked" and/or "extreme" limitations in his abilities to "understand, remember, or apply information" and "interact with others" and thus the ALJ should have found him disabled under Listing 12.11.[2] (Pl. Br. at 5–7; Reply at 1.)

---

[2] The Commissioner utilizes a "five-point rating scale" in evaluating a claimant's

To be disabled under Listing 12.11, a claimant must show an "extreme" limitation in one, or a "marked" limitation in two, area(s) of mental functioning, which include the abilities to "understand, remember, or apply information" and "interact with others." 20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.11(B). The former "refers to the abilities to learn, recall, and use information to perform work activities." *Id.* at 12.00(E)(1).[3] The latter "refers to the abilities to relate to and work with supervisors, co-workers, and the public." *Id.* at 12.00(E)(2).[4]

Here, the ALJ found Plaintiff had only "moderate" limitations in these areas. (R. at 19.)[5] Regarding Plaintiff's ability to understand, remember, or apply information, the ALJ cited various neuropsychological tests revealing borderline or low intellectual functioning and certain findings made by Dr. Penney. (*Id.*) In August 2016, Dr. Penney noted Plaintiff had "impaired" judgment, insight, fund of knowledge, and memory and "tangential" thought process. (*Id.* at 608-09.) However, Dr. Penney's progress notes from November 2016 state that Plaintiff had "intact" judgment and insight and "logical" thought process.

---

ability to function in a given mental area "independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.00(F)(2). A limitation in a given area may be categorized as: none, mild, moderate, marked, or extreme. *Id.* A "marked" limitation means the ability is "seriously limited." *Id.* at 12.00(F)(2)(d). An "extreme" limitation means the claimant lacks the ability. *Id.* at 12.00(F)(2)(e).

[3] "Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions." *Id.* at 12.00(E)(1).

[4] "Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." *Id.* at 12.00(E)(2).

[5] A "moderate" limitation means that a claimant's ability to function in the respective area is "fair." *Id.* at 12.00(F)(2)(c).

(*Id.* at 610–11.) And in February 2017, Dr. Penney noted that Plaintiff had "intact" judgment and insight and a "normal" fund of knowledge. (*Id.* at 612–13.) The ALJ also noted that Plaintiff plays Xbox, hangs out with a friend, and can remember his height, weight, and date of birth. (*Id.* at 19.) For all of these reasons, the ALJ concluded that Plaintiff had a "moderate" limitation in understanding, remembering, or applying information. (*Id.*)

This conclusion was rational and supported by substantial evidence. Even if another interpretation of the evidence could have directed a finding of "marked" limitation in this area, the ALJ's interpretation (yielding a finding of only "moderate" limitation) was rational and is therefore owed deference.

Next, regarding Plaintiff's ability to interact with others, the ALJ again found a "moderate" limitation. (*Id.* at 19.) The ALJ noted that Plaintiff reported in May 2016 that he was doing "pretty good" and denied anger. (*Id.*, citing *id.* at 606–07.) On the other hand, the ALJ also noted that in August 2016 Plaintiff was "resistant to performing chores at home." (*Id.*) In November 2016, Plaintiff "reported that he gets mad when his parents tell him to take a shower or to change his clothes." (*Id.,* citing *id.* at 608–09.) Last, the ALJ noted that in February 2017 Plaintiff was "playing Xbox and hanging out with a friend." (*Id.,* citing *id.* at 610-11.) For all of these reasons, the ALJ concluded that Plaintiff has a "moderate" limitation in interacting with others. (*Id.*)

This conclusion was also rational and supported by substantial evidence. Although the evidence shows some degree of limitation in interacting with others, as indicated by Plaintiff's negative interactions with his parents, Plaintiff stated he hangs out with friends and his cousin[6] and gets along well with authority figures. (*Id.* at 22, 247, 612.) Even if another interpretation of the evidence could have directed a finding of "marked" limitation in this area, the ALJ's interpretation (yielding a finding of only "moderate" limitation) was rational and is therefore owed deference.

---

[6] Specifically, in response to the question "Do you spent time with others?", Plaintiff answered yes in his application and wrote: "Hang out with my [cousin] and watch tv." (R. at 245.) Plaintiff also wrote that he "go[es] to movie 2 time a month." (*Id.*)

### D. The ALJ Failed To Demonstrate That The Opinions Of Dr. Lazorwitz And Dr. Waldman Are "Consistent With Independent Clinical Findings Or Other Evidence In The Record."

Plaintiff alleges that the opinions of Dr. Nicole Lazorwitz, Psy.D., and Dr. Larry Waldman, Ph.D., cannot constitute "substantial evidence" sufficient to reject Dr. Penney's opinion or to support the ALJ's RFC assessment.[7] (Pl. Br. at 15–19.) Drs. Lazorwitz and Waldman are non-examining, state agency psychologists who reviewed Plaintiff's application at the initial and reconsideration levels, respectively, and rendered opinions as to his mental RFC. (R. at 95–97 [Lazorwitz opinion], 114–15 [Waldman opinion].)

"The opinions of non-treating or non-examining physicians [or psychologists] may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957; *see also* 20 C.F.R. § 404.1527(c)(3) (stating that the weight given to opinions of non-examining sources depends on "the degree to which they provide supporting explanations for their medical opinions" and "the degree to which these medical opinions consider all of the pertinent evidence").

Here, the ALJ gave "great weight" to the non-examining psychologists' opinions, finding them "generally consistent with the evidence as a whole, which demonstrates that [Plaintiff] remains capable of performing unskilled work." (*Id.* at 24.) In particular, the ALJ noted that both had opined that Plaintiff "is able to remember basic workplace locations and procedures; remember and understand simple instructions; carryout simple instructions; follow simple work-like procedures; and make simple work-related decisions." (*Id.*) Moreover, the ALJ noted that both had opined that Plaintiff "appeared to have a fair ability to sustain attention throughout extended periods of time; a fair ability to

---

[7] It does not appear that the ALJ actually relied on these opinions to support her rejection of Dr. Penney's opinions—nowhere in section of the decision discussing Dr. Penney's opinions does the ALJ mention their opinions. As previously discussed, the sole (and erroneous) reason identified by the ALJ for rejecting Dr. Penney's opinions was inconsistency with his own treatment notes.

perform at a consistent pace particularly when engaged in simple work; and an adequate ability to maintain a regular schedule." (*Id.*)

As an initial matter, the Court disagrees with Plaintiff that non-examining physicians' opinions cannot amount to substantial evidence as "a matter of law." (Pl. Br. at 19.) As noted, "[t]he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Nevertheless, here, the ALJ failed to explain why the opinions of Dr. Lazorwitz and Dr. Waldman had the requisite level of consistency. The ALJ merely summarized their opinions and then asserted, with no explanation or supporting citations, that "they are generally consistent with the evidence as a whole." (R. at 24.) This sort of unreasoned assertion makes meaningful review impossible. Moreover, the opinions themselves are devoid of any meaningful analysis or citations to specific evidence, stating only that "[a]vailable data" supports the doctors' findings. (R. at 96, 115.)

## IV. REMEDY

The credit-as-true rule provides that a remand for calculation and award of benefits rather than a remand for further proceedings is appropriate when: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. However, "even [if] all conditions of the credit-as-true rule are satisfied," a court may remand for further proceedings if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Here, the Court finds the credit-as-true rule is inapplicable because the record is not fully developed. As discussed, further development of the record concerning Plaintiff's ability to watch Netflix and play video games is needed. Additionally, there is a conflict where Plaintiff alleged that he is incapable of counting money but testified that he is able

to go to the store to buy soda and has no problems interacting with the store employees. (*Id.* at 48–50, 245.) Moreover, even if all of the credit-as-true conditions were met, the Court finds "serious doubt" that Plaintiff is, in fact, disabled in light of Dr. Penney's notation that, when Plaintiff's father asked Plaintiff to complete a task, Plaintiff responded "I'm too lazy to do that." (*Id.* at 606.) Also, the psychologist who administered Plaintiff's neuropsychological testing noted Plaintiff "may be a good candidate for assistance from the Department of Vocational Rehabilitation to assist him in learning a trade as hands on learning is favored by [Plaintiff] vs. academic online learning." (*Id.* at 482.) He also noted that Plaintiff taught himself to use the computer (*id.* at 478), which may further support the conclusion that Plaintiff is capable of making simple decisions and completing simple tasks.

Plaintiff seeks an award of attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). The Court instructs Plaintiff to file a motion in conformance with 28 U.S.C. § 2412(d)(1)(B) if he intends to pursue such an award.

**IT IS THEREFORE ORDERED** reversing the decision of the Commissioner and remanding for further administrative proceedings consistent with this Order.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 10th day of March, 2020.

Dominic W. Lanza
United States District Judge